UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>JONATHAN MOSZ<br>    Defendant. | Case No. 2:22-cr-00103-ART-NJK<br>**Report and Recommendation**<br>[Docket No. 35] |

Pending before the Court is Defendant's motion to dismiss the indictment due to unconstitutional statute. Docket No. 35. The United States responded, Docket No. 36, and Defendant replied, Docket No. 38. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons more fully discussed below, the undersigned **RECOMMENDS** that Defendant's motion be **DENIED.**

**I.  BACKGROUND**

On May 17, 2022, a grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Docket No. 1 at 1-2. Defendant has previous convictions for robbery, battery with substantial bodily harm, and four firearms possession related offenses. *Id.* The instant offenses arose from an altercation that occurred on March 5, 2022, after which Defendant was arrested and a teal and black polymer firearm was seized from his person. Docket No. 36 at 2.

Defendant filed the instant motion seeking to dismiss the charges in the indictment as violative of the Second Amendment. He bases his motion on the Supreme Court decision, *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022). Docket No. 35 at 1. Defendant submits that, under the new test outlined in *Bruen*, the United States "cannot meet its burden to show a historical tradition of restricting people with felonies from possessing firearms." *Id.* at 3.

He submits that the American historical tradition of firearms regulation "used more targeted regulations to prevent dangerous people from committing crimes with guns" and that even those considered dangerous were allowed to keep weapons for self-defense. *Id.* In response, the United States submits that 18 U.S.C. § 922(g)(1) "falls within the nation's long-standing tradition of disarming citizens who engage in criminal activity or are otherwise not law-abiding." Docket No. 36 at 2. Defendant replies that the United States misapplies the *Bruen* test and is subversively attempting to have the Court consider the United States' interests in firearms regulation. Docket No. 38 at 2.

## II.   DISCUSSION

### A.   The *Bruen* Standard

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court concluded that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. 570, 592 (2008). *See also McDonald v. City of Chicago*, 561 U.S. 742, 749 (2010) (holding post-*Heller* "that the Second Amendment right is fully applicable to the States"). After *Heller*, courts almost uniformly adopted a two-step approach to evaluate Second Amendment challenges to firearms regulations. *Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (collecting cases applying the two-step approach).

In applying that two-step approach, courts first determined whether "the challenged law affects conduct that is protected by the Second Amendment." *Id.* (internal citation omitted). Courts would "base that determination on the historical understanding of the scope of the right." *Id.* (internal quotation marks omitted). If, based on the historical evidence, the regulation affected conduct outside the scope of the Second Amendment, then the analysis would stop. *Id.* If the regulation was found to burden conduct within the scope of the Second Amendment, courts would then move to step two. *Id.* at 784 (citation omitted).

Step two required courts first to determine the necessary level of scrutiny to be used in evaluating the regulation. *Id.* If a regulation affected the "core Second Amendment right" of the

defense of the home, courts would apply strict scrutiny. *Bruen*, 142 S.Ct. at 2126. All other firearms regulations were evaluated using an intermediate scrutiny test. *Id.* Intermediate scrutiny was also "appropriate when text and history [were] unclear in attempting to delineate the scope of the right." *Id.* at 2127.

"Despite the popularity of this two-step approach," the Supreme Court found that "it [was] one step too many." *Id.* Instead, the Supreme Court held that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. For a firearms regulation addressing conduct within the plain text of the Second Amendment to be constitutional, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Proving consistency with this Nation's historical tradition of firearm regulation depends on the nature of the subject regulation. "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. Attempts by earlier generations to regulate a problem by materially different means, or attempts by similar means that were struck down on constitutionality grounds, are also probative of a regulation's constitutionality. *Id.* When a regulation addresses a distinctly modern problem, courts must instead use analogical reasoning. *Id.* at 2132. "[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* (quoting C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). This "relevantly similar" inquiry, in turn, requires courts to consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. "[A]nalogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* It is only after the government has proven consistency with the Nation's tradition of firearm regulation, either through showing the regulation is distinctly similar to a historical regulation or by analogical

3

reasoning, that courts may "conclude that [an] individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)).

B.  Defendant's Motion

Defendant asks the Court to dismiss the indictment in the instant case because, he submits, the statutes charged are unconstitutional. Docket No. 35 at 4. He asks the Court to consider the constitutionality of 18 U.S.C. § 922(g)(1) on a blank slate under the *Bruen* standard outlined above.[1]

In *Heller* the Supreme Court wrote "[a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons…." 554 U.S. at 626. Although the Supreme Court qualified its statement that such "longstanding regulations" are only "presumptively lawful," 554 U.S. at 627 n.26, when the Court reiterated this point in *McDonald*, it used no such qualifying language. *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons'").

Defendant submits "that *Heller's* endorsement of felon-in-possession laws was in dicta." Docket No. 35 at 12 (quoting *United States v. Quiroz*, -- F. Supp. 3d --, 2022 WL 4352482, *5 (W.D. Tex. Sep. 19, 2022)). The case Defendant cites for that proposition is from the Fifth Circuit. The Ninth Circuit, however, considers *Heller's* endorsement of felon in possession laws to be binding. *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010). In reaching that conclusion, the Ninth Circuit observed that "[c]ourts often limit the scope of their holdings, and

---

[1] Most of Defendant's motion discusses this Nation's history of firearm regulation. Defendant submits that, if a widespread ban of felons possessing firearms is unconstitutional, so too must a widespread ban of felons possessing ammunition be unconstitutional. *Id.* at 28. He submits this is because "without bullets, the right to bear arms would be meaningless. A regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose." *Id.* (quoting *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). Because "the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them," *Jackson*, 746 F.3d at 967 (internal quotation omitted), the Court will focus its analysis on felon in possession regulations.

4

such limitations are integral to those holdings. Indeed, [l]egal rulings in a prior opinion are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling." *Id.* (internal quotation omitted).

Defendant submits that *Vongxay* was overruled by *Bruen* and is no longer good law. Docket No. 35 at 12-13. The Ninth Circuit has "recognized that circuit precedent, authoritative at the time that it issued, can be effectively overruled by subsequent Supreme Court decisions that are closely on point, even though those decisions do not expressly overrule the prior circuit precedent." *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (internal quotations and citation omitted). A case is effectively overruled when the higher court "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* at 900. "[T]he clearly irreconcilable requirement is a high standard." *FTC v. Consumer Defense, LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019) (quoting *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013)). "Although [courts] should consider the intervening authority's reasoning and analysis, as long as [a court] can apply our prior circuit precedent without running afoul of the intervening authority, [it] must do so." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (quoting *United States v. Orm Hieng*, 679 F.3d 1131, 1140 (9th Cir. 2012)).

Defendant submits that *Vongxay* is "bad law" because "it relied on a line of cases that had upheld felon-in-possession laws under the means-end scrutiny of the second step" that was rejected by *Bruen*. Docket No. 35 at 12. As Defendant observes, *Vongxay* relies on caselaw that has since been abrogated by subsequent Supreme Court opinions. *See Vongxay*, 594 F.3d at 1114-18. *Vongxay* does allude to the historical underpinnings of 18 U.S.C. § 922(g)(1). *Id.* at 1116-18. However, it does not conduct the type of in-depth historical analysis done in *Heller* and *Bruen*. *Compare Vongxay*, 594 F.3d at 1116-18 with *Bruen*, 142 S.Ct. at 2138-56 and *Heller*, 554 U.S. at 600-03, 605-16. Nowhere does *Vongxay* consider whether "the [challenged] regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. As has been noted, "there are good reasons to be skeptical of the constitutional correctness of categorical, lifetime bans of firearm possession by *all* felons." *United States v. Phillips*, 827 F.3d

5

1171, 1174 & n.2 (9th Cir. 2016) (emphasis in original) (quotation omitted). *See also Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting) (conducting a historical analysis of 18 U.S.C. § 922(g)(1) and concluding it is unconstitutional). Even pre-*Bruen*, some Ninth Circuit judges doubted the correctness of *Vongxay's* holding. *See* Docket No. 35 at 13 (collecting cases). "Admittedly, there is some tension between the Supreme Court's holding in" *Bruen* and the Ninth Circuit's holding in *Vongxay*. *Consumer Defense*, 926 F.3d at 1213. The Ninth Circuit, however, has "clarified that it is not enough for there to be some tension between the intervening higher authority and prior circuit precedent." *Id.*

The Justices' statements in *Bruen* itself confirm that it is not "clearly irreconcilable" with *Vongxay*. In his concurrence, Justice Alito noted that nothing in *Bruen* "disturbed anything that [the Supreme Court] said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 142 S.Ct. at 2157 (Alito, J., concurring). Similarly, Justice Kavanaugh, joined by Chief Justice Roberts, "underscore[d]" that "the Second Amendment allows a variety of gun regulations," and that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 2161-62 (Kavanaugh, J., concurring) (cleaned up) (quoting *Heller,* 554 U.S. at 626, 636)). Even Justice Breyer's dissent, joined by Justices Sotomayor and Kagan, "under[stood] the Court's opinion … to cast no doubt on [the] aspect of *Heller's* holding" regarding the validity of felon-in-possession laws. *Id.* at 2189 (Breyer, J., dissenting).

Defendant submits that the above-referenced statements are not controlling. Docket No. 38 at 5. However, the question is not whether the concurrences are controlling. The question is whether *Vongxay* can be applied consistently with *Bruen*. To the extent that the above-referenced statements are non-controlling *dicta*, "Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold," and courts can "not blandly shrug them off because they were not a holding." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) (quoting *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir. 1992) (Noonan, J., concurring and dissenting)). Put simply, "when the Court speaks, [lower courts] should take notice." *Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051, 1067 (9th Cir. 2020)

6

(internal citation omitted). Five sitting Supreme Court justices have indicated that felon in possession laws are constitutional, even after the new mode of analysis announced in *Bruen*. Considering these pronouncements by a majority of the Supreme Court, the Court cannot conclude that *Vongxay* is "clearly irreconcilable" with *Bruen*. *Vongxay's* holding, therefore, is still good law and 18 U.S.C. § 922(g)(1) remains constitutional.

This result is consistent with the conclusions of other courts that have considered the constitutionality of 18 U.S.C. § 922(g)(1) post-*Bruen*. Defendant cites *United States v. Quiroz* to support his argument that 18 U.S.C. § 922(g)(1) is unconstitutional under the *Bruen* standard. Docket No. 35 at 3, 12 (citing *Quiroz*, -- F. Supp. 3d --, 2022 WL 4352482 (W.D. Tex. Sep. 19, 2022) (Counts, J.)). *Quiroz* held that 18 U.S.C. § 922(n), which bars individuals under felony indictment from possessing firearms, is unconstitutional under the *Bruen* standard. It is telling, however, that at no point in either his initial motion or his reply does Defendant discuss two opinions from the same court, issued within two weeks of *Quiroz*, that held 18 U.S.C. § 922(g)(1) is consistent with the Second Amendment. *See United States v. Collette*, -- F. Supp. 3d --, 2022 WL 4476790 (W.D. Tex. Sep. 25, 2022) (Counts, J.); *United States v. Charles*, -- F. Supp. 3d --, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022) (Counts, J.). Further, to the Court's knowledge, every other court that has considered 18 U.S.C § 922(g)(1) post-*Bruen* has found it constitutional. *See, e.g.*, *United States v. Butts*, -- F. Supp. 3d --, 2022 WL 16553037 (D. Mont. Oct. 31, 2022); *United States v. Coleman*, 2023 WL 122401 (N.D.W. Va. Jan. 6, 2023); *United States v. Siddoway*, 2022 WL 4482739 (D. Idaho Sep. 27, 2022); *United States v. Young*, -- F. Supp. 3d --, 2022 WL 16829260 (W.D. Pa. Nov. 7, 2022); *United States v. Gray*, 2022 WL 16855696 (D. Col. Nov. 10, 2022). Until such time as the Supreme Court acts "to clarify the entire field" of permissible regulations under the Second Amendment, the Court finds that 18 U.S.C. § 922(g)(1) is constitutional. *Heller*, 554 U.S. at 635.

## III. CONCLUSION

For the reasons more fully discussed above, **IT IS RECOMMENDED** that Defendant's motion to dismiss the indictment due to unconstitutional statute be **DENIED**. Docket No. 35.

Dated: January 13, 2023

_____
Nancy J. Koppe
United States Magistrate Judge

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).